# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | | |
|---|---|---|
| REDZONE WIRELESS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:16-cv-00595-JDL |
| | ) | |
| NETGEAR, INC., | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER ON DEFENDANT'S MOTION TO STAY

This matter is before the court on the motion to stay this action filed by the defendant, Netgear, Inc. ("Netgear"). For the reasons explained below, Netgear's motion is granted.

### I. FACTUAL BACKGROUND

Plaintiff Redzone Wireless, LLC, is a Maine company that provides wireless broadband Internet access to customers in Maine. In the spring of 2015, it entered into an agreement to purchase 4,000 wireless routers from Netgear for approximately $500,000. In April 2015, the parties executed Netgear's Standard Terms and Conditions Agreement and entered into a separate side letter agreement a month later. The routers did not operate as well as Redzone expected, and consequently, the parties now dispute what their respective rights are under the Standard Terms and Conditions Agreement and the side letter agreement.

In September 2016, Redzone sent a demand letter to Netgear's in-house counsel formally revoking Redzone's acceptance of the routers, asserting various

contractual and statutory rights, and stating Redzone's intent to pursue all available legal remedies, including litigation. Redzone also requested that Netgear contact Redzone within five business days of receiving the letter to discuss the dispute.

On the fourth business day after Redzone sent the demand letter, October 3, 2016, Netgear filed suit for a declaratory judgment in California state court seeking a declaration that it is not obligated to spend further time and resources assisting Redzone in resolving the problem with the routers. Redzone removed the California lawsuit to the U.S. District Court for the Northern District of California in December 2016 and filed a motion to dismiss for lack of personal jurisdiction. That same month, Redzone filed this action against Netgear in the District of Maine. Netgear responded by filing its Motion to Stay.

## II. LEGAL ANALYSIS

Because Netgear filed suit in California first, it contends that its action should proceed rather than Redzone's, and cites the first-filed rule as the basis for its motion. The rule generally gives preference to the first of two duplicative actions proceeding in different federal courts, *Cianbro Corp. v. Curran–Lavoie, Inc.,* 814 F.2d 7, 11 (1st Cir. 1987), and lends a strong presumption in favor of the first-filed forum, *see Coady v. Ashcraft & Gerel,* 223 F.3d 1, 11 (1st Cir. 2000); *see also Nowak v. Tak How Invs., Ltd.,* 94 F.3d 708, 719 (1st Cir. 1996).

Courts have recognized two exceptions to the first-filed rule. *Getty Petroleum Marketing, Inc. v. 2211 Realty, LLC,* 2011 WL 2489988, at *4 (D. Mass. June 17, 2011). First, courts may disregard the rule where the party bringing the first-filed action engaged in misleading conduct in order to prevail in a pre-emptive "race

2

to the courthouse." *Id*. Second, courts may disregard the rule where the balance of convenience substantially favors the second-filed action. *Id*. (*citing Holmes Grp., Inc. v. Hamilton Beach/Proctor Silex,* 249 F.Supp.2d 12, 16 (D.Mass.2002)) (other citations omitted).

Redzone argues that Netgear's motion should be denied because it "plainly . . . engaged in a race to the courthouse for the sole purpose of trying to secure what it perceived to be a more advantageous forum in California." Yet Redzone does not identify any conduct on Netgear's part that misled Redzone into "staying [its] hand in anticipation of negotiation" so as to rebut the first-filed rule. *See Veryfine Prods., Inc. v. Phlo Corp.,* 124 F. Supp. 2d 16, 22 (D. Mass. 2000). In fact, Redzone's demand letter capped an approximately two-month period during which Redzone and Netgear's relationship deteriorated to the point that Netgear informed Redzone that it would "not be able to support further investigation on the [router] issue" and flatly stated that it would undertake no further efforts on Redzone's behalf. *See* ECF No. 16-3 at 20. This course of action does not suggest that Netgear engaged in "deception or stalling" to "buy time in order to secure a more favorable forum," *Dining Alliance, Inc. v. Nat'l Produce Consultants, LLC,* 2014 WL 6609233, at *2 (D. Mass. Nov. 20, 2014) (quoting *Transcanada Power Mktg., Ltd. v. Narragansett Elec. Co.,* 402 F. Supp. 2d 343, 348-49 (D. Mass. 2005)), or otherwise "lulled" Redzone into deferring a possible lawsuit, *see Biogen, Inc. v. Schering AG,* 954 F. Supp. 391, 398-99 (D. Mass. 1996).

Redzone also argues that the balance of convenience favors litigating the case in Maine because: (1) Maine is a more convenient forum for its employees and

3

customers, whom Redzone asserts will make up most of the witnesses at trial; (2) the routers at issue in the case are located in Maine; (3) Redzone is a significantly smaller business than Netgear and operates entirely within Maine; and (4) Maine has a greater public interest in the case than does California because Maine consumers were affected by the problem with the routers.

First, although the convenience of the witnesses is the most important factor, *Getty Petroleum,* 2011 WL 2489988, at *6, the fact that Redzone's employees and customers are located in Maine does not overcome the strong presumption in favor of California as Netgear's chosen forum. Redzone estimated at oral argument that its customers number in the thousands, but did not identify a single key witnesses, nor provide an indication of "the nature and quality of their testimony," nor state whether any of its witnesses can be compelled to testify, nor state why its customers could not provide statements by deposition or affidavit. *See id.* (citing *Princess House, Inc. v. Lindsey,* 136 F.R.D. 16, 18 (D. Mass. 1991)). Second, the availability and location of evidence only has substantive weight where an onsite viewing of the evidence or location is necessary. *See id.* (citing Wright, Miller & Cooper, *Fed. Prac. & Proc.* 3d, § 3854 at 297-98 (2007)). Where, as here, a case involves claims that are primarily contract-based, there is at best "a slight likelihood" that this will be necessary. *Id.* Third, although Redzone is the smaller company, it has only shown the "common 'hardships' associated with civil litigation, namely, travel, employee absence, document production, etc.," and, therefore, is not "entitled to deference because its operation is small." *Veryfine,* 124 F. Supp. 2d at 26.

4

Finally, Redzone has not identified any case law that suggests that a court should take into account which forum has the greater "public interest" in a dispute. To the extent this factor is considered here, however, there has been no showing that Maine consumers will benefit if Redzone is successful in this litigation. In addition, the parties' contract provides that it is to be governed by California law. Thus, Maine's "public interest" and California's "public interest" stand in equipoise.

### III. CONCLUSION

For the reasons explained above, I conclude that Redzone has failed to show that Maine is so substantially more convenient a forum than California as to rebut the presumption in favor of the first-filed action. Therefore, Netgear's Motion to Stay (ECF No. 15) is **GRANTED**.

**SO ORDERED.**

**This 14th day of April 2017.**

                                                  /s/ **JON D. LEVY**
                                                  **U.S. DISTRICT JUDGE**