# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| **REDZONE WIRELESS, LLC,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 2:16-cv-00595-JDL |
| | ) |
| **NETGEAR, INC.,** | ) |
| | ) |
| Defendant. | ) |

## ORDER ON MOTION TO DISMISS

The Plaintiff Redzone Wireless, LLC ("Redzone") asserts that internet routers it purchased from Defendant NETGEAR, Inc. ("NETGEAR") were defective and that NETGEAR sold the routers with knowledge of their defects, made misrepresentations during the negotiation of the sale, and is in breach of their contract. In its Amended Complaint, Redzone brings claims for revocation of acceptance pursuant to Cal. Com. Code § 2608 (2018) and 11 M.R.S.A. § 2-608 (2018), breach of warranty and contract, unjust enrichment, fraudulent misrepresentation, fraudulent inducement, negligent misrepresentation, breach of the implied covenant of good faith and fair dealing, and violation of the Cal. Bus. & Prof. Code §§ 17200, *et seq.* and 17500, *et seq.* (2018). NETGEAR has moved to dismiss Redzone's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted (ECF No. 46). For the reasons that follow, NETGEAR's motion is **DENIED**, but Redzone is ordered to amend its complaint to provide the source of information concerning its claims for fraud as detailed below.

## I. FACTUAL BACKGROUND

The following factual allegations from the Amended Complaint are accepted as true for the purposes of the motion to dismiss. Redzone provides wireless broadband internet services to residential and business customers in Maine. NETGEAR manufactures networking equipment, including wireless routers. In 2015, Redzone contracted with NETGEAR to purchase 4,000 LG6100D LTE Gateways (the "Routers"). The Routers were originally manufactured by NETGEAR for Sprint Corporation ("Sprint") and bore Sprint-specific branding, logos, packaging, and SIM cards. The transaction was memorialized in two written agreements: (1) NETGEAR's Standard Terms and Conditions, executed on April 6, 2015 (the "Standard Agreement"), and (2) Redzone Wireless Custom LG6100 SKU Side Letter Agreement, executed May 13, 2015 (the "Side Letter Agreement"). Redzone alleges that during their negotiations and in response to direct questioning, NETGEAR represented that Sprint had declined to take delivery of the Routers because Sprint "decided to take another direction in their business," or words to that effect. ECF No. 39 at ¶ 76.

Redzone accepted delivery of the Routers in June 2015. Consistent with the Side Letter Agreement, the Routers were delivered with Sprint branding and packaging, and Redzone then rebranded and repackaged the devices at its own cost. Shortly after Redzone began distributing the Routers to its customers, Redzone began receiving complaints that some of the Routers were experiencing internet connectivity and disconnection issues. As a result, Redzone alleges that some

customers cancelled their Redzone services. Although NETGEAR acknowledged that there was a defect and initially worked with Redzone to try and correct the problem, in late August 2015, NETGEAR informed Redzone that it would discontinue its effort to fix the problem with the Routers. Redzone alleges that it subsequently learned that Sprint failed to take delivery of some or all of the Routers because it experienced the same connectivity and disconnection issues that Redzone's customers subsequently experienced.

## II. STANDARD OF REVIEW

NETGEAR has moved to dismiss the Amended Complaint for failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint "must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Rodríguez–Reyes v. Molina–Rodríguez*, 711 F.3d 49, 53 (1st Cir. 2013) (internal quotation marks omitted). In evaluating a motion to dismiss, the Court will accept all well-pleaded facts as true and draw all reasonable inferences in the Plaintiff's favor. *Id.* at 52-53. Determining the plausibility of a claim is a context-specific task that requires the court "to draw on its judicial experience and common sense." *Id.* at 53 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

## III. DISCUSSION

NETGEAR makes six arguments for dismissal: (A) Redzone has no remedies under the Uniform Commercial Code ("UCC") (Count I); (B) Redzone's claim for breach of warranty/contract is barred by the terms of the parties' agreements (Count

II); (C) Redzone's unjust enrichment claim has no basis in law or fact (Count III); (D) Redzone fails to plead claims sounding in fraud with the specificity required by Fed. R. Civ. P. 9(b) (Counts IV-VI); (E) Redzone's claim for breach of California's implied covenant of good faith and fair dealing fails because the parties have a contractual relationship (Count VII); and (F) Redzone's Unfair Competition Law claim fails because Redzone failed to plead that NETGEAR's conduct was unlawful, unfair, or fraudulent (Count VIII). I address each argument in turn.

The parties dispute whether the Standard Agreement's California choice of law provision applies to Redzone's extra-contractual claims: NETGEAR argues that California law applies, which Redzone disputes. I do not decide the choice of law issue and find that Redzone's claims survive even if California law applies as NETGEAR, the moving party, contends.[1]

## A. Count I: Revocation of Acceptance

NETGEAR argues that Redzone waived its right to revoke acceptance under the UCC both because it refurbished the Routers after accepting delivery and because it contracted to buy the Routers "as-is."[2] NETGEAR further argues that Redzone

---

[1] NETGEAR makes no arguments for dismissal under Maine law, and I therefore make no findings under Maine law.

[2] Redzone brings Count I under 11 M.R.S.A. § 2-608 and Cal. Com. Code § 2608, both of which adopt the UCC in full. Section 2-608 states:

> (1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it
>
> > (a) On the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or
> >
> > (b) Without discovery of such nonconformity, if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

4

cannot satisfy the UCC's required elements for revocation because the "as-is" language in the Side Letter Agreement precludes Redzone from (1) "reasonably assuming" that any alleged nonconformity of the Routers would be cured and (b) claiming that its acceptance was "reasonably induced" by NETGEAR. 11 M.R.S.A. § 2-608; Cal. Com. Code § 2608.

The Standard Agreement states that "refurbished Products . . . shall not be returnable under any circumstances." ECF No. 49 at 1. NETGEAR argues that because the Routers were customized for Sprint, and then re-customized by Redzone, the Routers are "refurbished" and therefore cannot be returned, and Redzone's acceptance cannot be revoked. Neither the Standard Agreement nor the Side Agreement defines "refurbished," nor does either agreement indicate that the Routers, as delivered to Redzone, are considered to be refurbished. Therefore, "refurbished" is a term that takes on different meanings depending on the context in which it is used. Without a factual record illuminating the parties' intent or industry practice, among other things, I cannot determine whether Redzone should be regarded as having effectively waived its right to return the Routers by having rebranded them.

---

(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.

11 M.R.S.A. § 2-608; *see also* Cal. Com. Code § 2608 (same).

5

NETGEAR also argues that the "as-is" language in the Side Letter Agreement bars Redzone's claim. There is, however, a reasonable basis to conclude that NETGEAR takes this language out of context. The section of the Side Letter Agreement containing the "as-is" language, entitled "Logistics and Packaging," states that "NETGEAR shall *deliver* the Product as-is to [Redzone], and, other than the specific exceptions described below, [Redzone] will reconfigure and repackage the Product at [Redzone's] cost . . . ." ECF No. 49-1 at 1 (emphasis added). Redzone argues that considered in context, the as-is language has nothing to do with warranties but rather relates to Redzone's purchase of products branded with Sprint logos. Thus, the routers weren't being *sold* as-is (the sale being governed by the Standard Agreement), they were just *delivered* as-is (meaning, with Sprint branding).

Uniform Commercial Code § 2-316 states that "[u]nless the circumstances indicate otherwise, all implied warranties are excluded by expressions like 'as is', 'with all faults' or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty." U.C.C. § 2-316; 11 M.R.S.A. § 2-316(3)(a); Cal. Com. Code § 2316(3)(a). The language at issue here, found in the "Logistics and Packaging" section of the agreement addressing the rebranding of the Sprint routers, does not call attention to an exclusion of warranties, and the circumstances and context can reasonably be read as supporting a different meaning. I therefore cannot conclude, based on nothing more than the Amended Complaint, that this provision of the contract bars Redzone's UCC claim as a matter of law.

6

## B. Count II: Breach of Warranty/Contract

NETGEAR argues that Redzone's claim for breach of warranty/contract is precluded by express disclaimers in the parties' contract. Specifically, NETGEAR cites a provision in the Standard Agreement, which states that "the foregoing warranties and limitations are exclusive remedies . . . including without any limitation warranty of merchantability or fitness for a particular purpose." ECF No. 49 at 1 (quoted language changed from capital to lower case). Redzone argues that NETGEAR takes these disclaimers out of context.

The disclaimer in the Standard Agreement is preceded by a "Hardware Warranty," pursuant to which NETGEAR warranted that each item of hardware would "be free from defects in workmanship and materials," and a "Software Warranty," pursuant to which NETGEAR warranted that the product would "function . . . substantially as described." *Id*. A plain reading of the contract therefore indicates that the Hardware and Software Warranties are the "foregoing warranties" not excluded by the disclaimer. Contrary to NETGEAR's contention, these warranties may provide a basis for the remedies that Redzone seeks. The Hardware Warranty, for instance, warrants that each router "will be free from defects in workmanship and materials" and commits NETGEAR to "promptly repair[ing] or replac[ing] any failed component." *Id*. Redzone alleges that NETGEAR has failed to promptly repair or replace the defective Routers. Whether the alleged defects constitute a breach of the hardware or software warranties cannot be determined at the pre-discovery pleading stage. Redzone's allegations, however, plausibly invoke

7

either warranty, and Redzone has therefore alleged a viable claim for breach of warranty and contract.

## C. Count III: Unjust Enrichment

NETGEAR argues that Redzone's claim for unjust enrichment must be dismissed because California law does not recognize such a cause of action. California law, on the contrary, appears unsettled on recognizing unjust enrichment as a cause of action. *See ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016) (comparing cases). Confronted with a split among California state courts, the Ninth Circuit has interpreted California law to allow for unjust enrichment claims:

> Some California courts allow a plaintiff to state a cause of action for unjust enrichment, while others have maintained that California has no such cause of action. While California case law appears unsettled on the availability of such a cause of action, this Circuit has construed the common law to allow an unjust enrichment cause of action through quasi-contract. We therefore allow the cause of action, as we believe it states a claim for relief as an independent cause of action or as a quasi-contract claim for restitution.

*Id.* (internal citations omitted). I adopt the Ninth Circuit's interpretation and conclude that Redzone's claim for unjust enrichment is permissible under California law.

NETGEAR further argues that Redzone's unjust enrichment claim fails because it has not alleged unjust or inequitable conduct and because the existence of a valid contract prevents relief for unjust enrichment, a quasi-contractual claim. These arguments fail: Redzone can, with amendment, adequately plead fraud in the inducement (*see infra* Section III.D), which can constitute unjust conduct for the purposes of unjust enrichment. Furthermore, "[f]raud in the inducement can serve

8

as both a basis for tort liability . . . and as grounds for rescinding a contract." *Kenda Corp. v. Pot O'Gold Money Leagues, Inc.*, 329 F.3d 216, 224 (1st Cir. 2003). If the contract between the parties is ultimately rescinded, Redzone may still properly recover on the quasi-contractual theory of unjust enrichment.

**D.     Counts IV-VI: Fraud**

NETGEAR argues that Redzone's claims for fraudulent misrepresentation, fraudulent inducement, and negligent misrepresentation must be dismissed because Redzone has not pled each claim with requisite particularity pursuant to Rule 9(b). A complaint must "be specific about the 'time, place, and content of an alleged false representation[.]'" *Murtagh v. St. Mary's Reg'l Health Ctr.*, No. 1:12-cv-00160-NT, 2013 WL 5348607, at *6 (D. Me. Sep. 23, 2013) (quoting *Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir. 1985)). Rule 9(b) also requires that plaintiffs identify a basis for inferring scienter on the part of the defendant. *N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 13 (1st Cir. 2009) (complaint must "set[] forth specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading") (internal citation omitted).

The Amended Complaint identifies specific statements, made on specific dates, by specific people relating to the alleged misrepresentations as to why Sprint had not taken delivery of the Routers and whether Sprint had experienced connectivity problems with the Routers. *See* ECF No. 39 at ¶¶ 74-76, 88-90. The Amended Complaint also provides a basis for inferring scienter. It alleges that NETGEAR knew that Sprint had experienced similar connectivity issues, and had refused

9

delivery of the Routers on that basis, at the time Redzone inquired as to why Sprint refused the Routers. *See id.* at ¶¶ 78-80.

The information underpinning the inference of scienter, however, is offered on "information and belief," and does not name a source. The First Circuit has "recognized that, under Rule 9(b), a plaintiff may make allegations of fraud on the basis of personal knowledge or on 'information and belief.'" *U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 226 (1st Cir. 2004), *abrogation on other grounds recognized by U.S. ex rel. Nargol v. DePuy Orthopaedics, Inc.*, 865 F.3d 29, 37 (1st Cir. 2017). However, allegations of fraud made on information and belief are subject to the additional requirement that "the complaint set[ ] forth the facts on which the belief is founded." *Id.* (internal quotation marks omitted); *see also Romani v. Shearson Lehman Hutton*, 929 F.2d 875, 878 (1st Cir. 1991) ("Where allegations of fraud are . . . based only on information and belief, the complaint must set forth the source of the information and the reasons for the belief.").

Redzone makes clear in its opposition to NETGEAR's Motion to Dismiss that Sprint is the source of the information from which one can infer scienter. *See* ECF No. 50 at 13. With the addition of this information, Redzone's allegations of fraud are sufficiently pled under Rule 9(b).[3] Redzone is therefore ordered to amend its

---

[3] NETGEAR's argument that the parol evidence rule bars Redzone's fraud and misrepresentation claims is without merit: The parol evidence rule does not preclude evidence of fraudulent representations. *See Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Ass'n*, 55 Cal.4th 1169, 1182 (Cal. 2013) (quoting *Ferguson v. Koch*, 204 Cal. 342, 347 (Cal. 1928)) ("[I]t was never intended that the parol evidence rule should be used as a shield to prevent the proof of fraud."); *see also Kaplan v. Blue Hill Mem'l Hosp.*, No. 1:14-cv-276-DBH, 2014 WL 7272846, at *7 (D. Me. Dec. 17, 2014) (quoting *Ferrell v. Cox*, 617 A.2d 1003, 1006 (Me. 1992)) ("A signed agreement that contradicts prior oral statements does not bar an action for fraud as a matter of law. Parol evidence of fraudulent inducement may be introduced to show that a signed document does not reflect the intent of the parties.").

pleadings to identify the source of the information supporting the assertion that Sprint refused delivery of the Routers because of connectivity issues and that NETGEAR was aware of Sprint's reason for doing so.

E.   **Count VII: Implied Covenant of Good Faith and Fair Dealing**

NETGEAR argues two seemingly contrary positions in favor of dismissing Redzone's claim for breach of the implied covenant of good faith and fair dealing: In its motion to dismiss, it argues that Redzone's implied covenant claim must fail because it rests on the same facts as—and is redundant of—Redzone's breach of contract claim; in its reply, however, NETGEAR argues that an implied covenant claim must be tied to a specific contractual provision and that no specific contractual provision supports Redzone's claim.

The law does not support NETGEAR's second argument: "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement . . . [B]reach of a specific provision of the contract is not a necessary prerequisite." *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal.4th 342, 371, 373 (Cal. 1992); *see also Marsu, B.V. v. Walt Disney Co.*, 185 F.3d 932, 937-38 (9th Cir. 1999) ("[T]he covenant is implied . . . to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenant) frustrates the other party's rights of the benefits of the contract.") (internal quotation marks omitted).

The allegations of the Amended Complaint do not support NETGEAR's first argument: Redzone's claim for breach of the implied covenant of good faith and fair

11

dealing is not premised on facts duplicative of its breach of contract claim, but rather on allegations that NETGEAR actively concealed the Routers' alleged defects *before* (and also after) the contract was executed. These allegations, which I accept as true for the purposes of the Motion to Dismiss, precede the existence of the parties' contract and are distinct from Redzone's claim for breach of contract. Thus, Redzone alleges a viable claim for breach of the implied covenant of good faith and fair dealing.

F. **Count VIII: Unfair Competition**

NETGEAR argues that because Redzone fails to plead fraud with sufficient particularity pursuant to Rule 9(b)'s heightened pleading standard, its claim for unfair competition, which is premised, in part, on the "fraudulent" prong of California's Unfair Competition Law ("UCL"), must be dismissed. Having already determined that Redzone, with the ordered amendment, can plead fraud with sufficient particularity (*see supra* Section III.D), I similarly reject this argument. *Cf. Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 1000 (N.D. Cal. 2013) (plaintiff stated a claim for violation of the fraudulent prong of the UCL where plaintiff had sufficiently stated a claim for fraud by omission). Furthermore, there is an independent basis for Redzone's claim to survive on the unfairness prong of the UCL. *See id.* (automobile buyers stated UCL claim against manufacturer and its sales company for violation of unfairness prong where buyers alleged that failure of manufacturer and company to disclose headlamp defect violated public policy); *see also McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1473 (Cal. Ct. App. 2006) ("A business practice is unfair within the meaning of the UCL if it violates

established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits.").

## IV. CONCLUSION

For the foregoing reasons, NETGEAR's Motion to Dismiss (ECF No. 46) is **DENIED**. It is further ordered that Redzone shall amend its complaint within seven (7) days of this Order to identify the source of its information concerning the claims for fraud.

**SO ORDERED.**

**Dated this 8th day of June, 2018.**

                                                                     **/s/ JON D. LEVY**
                                                          **U.S. DISTRICT JUDGE**